**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Louis Daurio, | No. CV-18-03299-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Department of Child Safety, et al., | |
| Defendants. | |

Before the Court are Plaintiff Steven Louis Daurio ("Plaintiff")'s Motion for Partial Summary Judgment (Doc. 90) and Defendants Reynolds, Passmore, and Cargill ("Defendants")' Cross Motion for Summary Judgment (Doc. 97).[1] For the following reasons, Plaintiff's Motion is denied, and Defendants' Motion is granted in part.

## BACKGROUND

This case arises out of an investigation conducted by multiple Department of Child Safety ("DCS") employees concerning Plaintiff and his then ten-year-old son, AMD. The investigation began in August 2016 after AMD told school authorities that his father hit him with a pool skimmer pole, leaving bruises. A DCS criminal investigator, Jamie Jenkins, met with AMD a few days after the report and made a finding that he "felt safe" and "had no visible marks or bruises." (Doc. 99 at 5.) DCS Caseworkers Defendants

---

[1] The Parties' request for oral argument are denied because they have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Reynolds and Passmore nonetheless continued the investigation, holding a Team Decision-making Meeting ("TDM") to discuss emergency removal of AMD. Defendants allege that they continued the investigation because of deficiencies in Investigator Jenkins' initial response. *Id.*

Mother and her representatives were invited to, and participated in, the TDM, but Plaintiff was not notified of it.  Defendants claim that he was excluded at the direction of law enforcement, who were investigating the allegations. (Doc. 99 at 9.) Plaintiff, however, alleges that the meeting predated Defendants' contact with law enforcement, and that they are misstating their motives to avoid disclosing his intentional exclusion. (Doc. 94 at 4.) After the TDM, a TDM facilitator created a TDM Summary which recommended ADM be removed from Plaintiff's custody. (Doc. 94-3 at 7.) Plaintiff asserts ADM's Mother used the report to seek a Protective Order against Plaintiff, at the direction of the Defendants. (Doc. 94 at 5.) The petition was initially granted *ex parte* and was subsequently upheld after an evidentiary hearing where Plaintiff was represented by counsel and permitted to testify and present evidence. (Doc. 99 at 15.) Mother then successfully sought a modification of Plaintiff's parenting time and decision-making authority, and Plaintiff's parenting time was suspended. (Doc. 99 at 16.)

Defendants subsequently interviewed Plaintiff about the August allegation, and Plaintiff alleges a series of violations in their investigative procedures. He claims, for example, that Defendants refused to consider exculpatory information he provided at the meeting; failed to document their contacts with Mother and provide him notice of her communications with DCS; altered his address in their system so that he would not receive future mailed notifications; and failed to notify Plaintiff when DCS received allegations of Mother's neglect. (Doc. 94 at 6–8.) In response, Defendants allege they considered the evidence, but Plaintiff's exculpatory information was not exculpatory; that Plaintiff's allegations of failed notifications are largely false; and that the address change was accidental and ultimately unharmful because Plaintiff received the notification through a timely disclosure in the related family court proceeding. (Doc. 99 at 18, 21.) A family court

ultimately granted Plaintiff sole decision-making authority over AMD, finding that the AMD allegation was unsubstantiated, the DCS file did not indicate observed injuries, and that restricting Mother's parenting time was in the best interest of AMD. (Doc. 99 at 3, 26-27.) DCS also ultimately found that the allegations were unsubstantiated and removed Plaintiff from the Central Registry of child abusers. *Id.*

Plaintiff subsequently brought the instant suit, alleging violations of Arizona Law and his constitutional rights to procedural and substantive due process. The Court dismissed Plaintiff's Arizona Law claims, so only Plaintiff's constitutional due process claims remain. (Doc. 87.)

## DISCUSSION

### I.    Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

## II.   Analysis

### a.   Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Id.* at 735. Because neither right was clearly established at the time of the challenged conduct, the Court need not reach whether Plaintiff offered facts establishing that Defendants violated his constitutional rights.

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. at 741). Although the Ninth Circuit does "not require a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Keates v. Koile*, 883 F.3d 1228, 1239 (9th Cir. 2018) (quoting *al-Kidd*, 563 U.S. at 741); *see Sharp v. Cty. of Orange*, 871 F.3d 901, 910 (9th Cir. 2017) ("The Supreme Court has repeatedly instructed that we examine 'whether the violative nature of *particular* conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law.'") (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The Supreme Court in *Wesby* reiterated:

> It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret

it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that "every reasonable official" would know. . . . We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established."

138 S. Ct. at 589–90 (internal citations omitted). "The plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991). "If a plaintiff fails to allege a violation of a clearly established law, the court need not even reach the other issues presented regarding qualified immunity." *Knox v. Sw. Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997).

### i.   Substantive Due Process Right to Familial Association

"Although a parent's right to participate in his child's care, custody, and management is clearly established 'as a broad general proposition,' what that right means 'in light of the specific context'" of a defendant's actions may not be clearly established. *James v. Rowlands*, 606 F.3d 646, 652 (9th Cir. 2010) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010) (finding that the district court erred by evaluating the abstract right of familial association at a high level "without regard to the relevant fact-specific circumstances"); *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001) ("The constitutional right of parents and children to live together without governmental interference is well established.").

Thus, although it is well-settled that Plaintiff's alleged ultimate harm, loss of time with his child, implicates a constitutional liberty interest, it is not well-settled that there were constitutional violations from Plaintiff's more specific allegations: that he was excluded from the TDM; that he did not receive notice letters; and that exculpatory information he provided was disregarded. Plaintiff points to no caselaw with similar facts,

and the Court is not aware of any precedent which establishes that failure to include a parent in an investigation either because of failure to notify, or ill-will as Plaintiff alleges, amounts to a constitutional violation. Absent such an analogous finding, the violation is not clearly established, and Defendants are entitled to qualified immunity. *See, e.g.*, *Jones v. Cty. of Los Angeles*, 722 F. App'x 634, 637 (9th Cir. 2018) (finding that, although it was well settled that a child could not be removed from her parents without prior juridical authorization, it was not beyond debate that the totality of the circumstances could support a seizure because of an exigency given no prior case specifically addressed when an infant could be seized at a hospital without a warrant); *Williams v. Cty. of San Diego*, No. 17CV815-MMA (JLB), 2017 WL 6541251, at *8 (S.D. Cal. Dec. 21, 2017) (granting qualified immunity because there was no Ninth Circuit precedent that established that interviewing a child at school without the parents' notice or consent violated their Fourteenth Amendment Rights to familial association).

### ii.  Procedural Due Process

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "While the right to due process is 'clearly established' by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100 (9th Cir. 1995). Rather, "[t]he right the official is alleged to have violated must be made specific in regard to the kind of action complained of for the constitutional right at issue to have been clearly established." *Id.* at 1100–01. Thus, "because procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims 'can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent.'" *Brewster*, 149 F.3d at 983 (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir.1989)).

Here, there is no closely corresponding factual or legal precedent which clearly

established Plaintiff's procedural due process rights. Plaintiff alleges his rights were violated because he was not provided with protections mandated by the "scheme of laws, administrative rules and policies protecting familial relationships in DCS investigations." (Doc. 113 at 9.) But this contention that the Arizona statutes governing DCS establish what process he must be afforded conflates the two prongs of the due process analysis. Mandatory statutory language can establish a liberty interest which entitles a defendant to procedural protections. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) ("[A] liberty interest may arise from the Due Process Clause or be created by state law."). It does not follow, however, that the terms of the statute dictate what process Plaintiff must be afforded to satisfy the requirements of the Due Process Clause. *Brewster*, 149 F.3d at 983; *Haugen v. Fields*, 366 F. App'x 787, 788 (9th Cir. 2010) (noting that a "due process claim depends on federal constitutional law, not state law").

Rather, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster*, 149 F.3d at 983; *see Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Ninth Circuit has repeatedly found that violations of state statutes which enact procedural protections do not prove a violation of a clearly established federal right. *See Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) ("[I]t is not enough to say simply that the right was clearly established by the California statute. It must be clear that the state law created a right protected by the Constitution. The state statute, on its own, could not do that.") (internal citation and quotation omitted); *Mueller v. Auker*, 576 F.3d 979, 998 (9th Cir. 2009) (finding that "controlling state laws regarding notice did not clearly establish a federal right").

Thus, no clearly established law demonstrates that the process Plaintiff received was constitutionally deficient. Rather, the clear mandates from prior case law revolve around process due prior to or after removal of a child. *See, e.g.*, *Mabe*, 237 F.3d at 1106 (clarifying that judicial authorization is generally required before interfering with a parent's custody); *Ram*, 118 F.3d at 1311 (discussing when imminent danger justifies taking a child into custody). Here, Defendants did not physically remove AMD from Plaintiff's custody;

Plaintiff challenges their process prior to that action. These factual disparities from the established law demonstrate that the right was not clearly established at the time of Defendants' alleged violations.

### iii.  Precluded Claims

Qualified immunity bars Plaintiff's due process claims because neither violation was clearly established at the time of the alleged violation. This holding does not apply, however, to a claim for injunctive or declaratory relief brought against Defendants. *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 527 (9th Cir. 1989) ("Qualified immunity is an affirmative defense to damage liability; it does not bar actions for declaratory or injunctive relief."). The First Amended Complaint seeks "non-Financial" damages, requesting that DCS: (1) alter and seal its records; (2) be precluded from using the allegation at issue against the Plaintiff in the future; and (3) be required to notify the police of Plaintiff's allegation. (Doc. 13 at 58–59.) Therefore, to the extent that Plaintiff asserts a claim for injunctive relief, such a claim is not barred. Plaintiff's constitutional claims are thus addressed below.

### b.  Constitutional Claims

"Courts have characterized the right to familial association as having both a substantive and a procedural component. While the right is a fundamental liberty interest, officials may interfere with the right if they 'provide the parents with fundamentally fair procedures.'" *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)) (internal citation omitted). Plaintiff alleges violations of both his Substantive and his Procedural Due Process Rights.

### i.  Substantive Due Process

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (internal quotations omitted); *see Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc). The Fourteenth Amendment protects

against "unwarranted interference with the right to familial association." *Keates*, 883 F.3d at 1236.

Courts understand unwarranted interference as a flexible standard which accounts for the circumstances of the alleged violation.  In *Lee*, for example, the Ninth Circuit found that the plaintiff had plausibly alleged unwarranted interference where law enforcement officers repeatedly told a mother looking for her son that they had no record of his location, though they knew he had been extradited to another state because of their false arrest. 250 F.3d at 685–86; s*ee also Crowe v. Cty. of San Diego*, 608 F.3d 406, 442 (9th Cir. 2010) (affirming a district court's grant of summary judgment for the plaintiff where the defendants failed to demonstrate that there was reasonable cause to believe removal of the children was warranted by California law). District courts draw on this example to explain that "[u]nwarranted interference includes governmental actions that are vexatious and unnecessary, harassing, unfounded or unreasonable, and arbitrary, discriminatory, or demonstrably irrelevant." *Martinez v. City of W. Sacramento*, No. 216CV02566TLNEFB, 2019 WL 448282, at *18 (E.D. Cal. Feb. 5, 2019); *Reyes v. Cty. of San Joaquin*, No. CIVS040428FCDPANPS, 2005 WL 2105030, at *3 (E.D. Cal. Aug. 31, 2005), *report and recommendation adopted*, No. CIV.S-040428FCDPANPS, 2005 WL 2372703 (E.D. Cal. Sept. 27, 2005); *see also McCue v. S. Fork Union Elementary Sch.*, 766 F. Supp. 2d 1003, 1008–09 (E.D. Cal. 2011) ("Interference with the familial relationship is 'unwarranted' when it is effected for the purposes of oppression.").

Here, there is a genuine issue of material fact over whether Defendants unreasonably interfered with Plaintiff's familial relationship with his son. A reasonable jury could conclude based on the facts that Defendants pattern of errors and exclusion demonstrates willful intrusion amounting to unreasonable and unwarranted interference. Plaintiff alleges that Defendants persisted in an unwarranted investigation; refused to interview witnesses he claims would have provided exculpatory evidence (Doc. 112-14 at 3); that Defendant Reynolds refused to accept exculpatory evidence he provided her (Doc. 94-1 at 10–11); and that Defendants repeatedly failed to notify him. (Doc. 112-14 at 9); (112-31 at 7). He

also claims that "Defendants Reynolds and Passmore falsified the TDM notice," explaining that, although the TDM report asserts he was not notified of the meeting at the request of law enforcement because of their ongoing investigation, both Defendant Reynolds and Defendant Passmore state in their depositions that they did not speak to Detective Cuthbertson until after the TDM meeting. (Doc. 94-5 at 3–4); (Doc. 94-6 at 3–4). Moreover, a reasonable jury could find that Defendants violated Plaintiff's rights even though it was a subsequent hearing which ultimately altered his parenting time. Plaintiff alleges that Defendants precipitated the events which led to the hearing, and that they encouraged Mother to seek the termination of his parental rights. (Doc. 94 at 4.)

Likewise, a reasonable jury could also find that the reports of abuse and law enforcement involvement establish Defendants conducted their investigation reasonably. Defendants allege that AMD reported physical abuse from Plaintiff and that Defendant Passmore believed based on this report and previous incidents that the relationship could involve a pattern of abuse. (Doc. 98-2 at 106.) They further claim Defendant Reynolds saw bruising on AMD consistent with the account of the incident; Plaintiff was not notified of the TDM at the direction of law enforcement; and that the TDM came to the conclusion that there was a safety concern for AMD. (Doc. 98-2 at 26). Defendants' asserted justifications for their actions demonstrate that there is a genuine issue of fact.

Both parties' motions for summary judgment for Plaintiff's substantive due process claims must therefore be denied.

### ii.  Procedural Due Process

Procedural Due Process guarantees adequate procedural protections prior to deprivation of a constitutionally protected liberty interest. *Brewster*, 149 F.3d at 982. Whether procedures satisfy due process is a flexible analysis evaluated in accordance with the three-part balancing test outlined in *Mathews v. Eldridge*:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

1
2
3

> additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

4
5
6
7
8
9
10

424 U.S. 319, 335 (1976); *see Santosky*, 455 U.S. at 754 (applying Mathews to child termination proceedings). Specifically, "when the state has a legitimate interest in interfering with a parent-child relationship, for example, where the best interest of the child arguably warrants termination of the parent's custodial rights, the state may legitimately interfere so long as it provides 'fundamentally fair procedures.'" *Smith*, 818 F.2d at 1419 (quoting *Santosky*, 455 U.S. at 754.).

11
12
13
14
15
16
17
18
19
20
21
22
23

Generally, "[f]ederal procedural due process guarantees prompt post-deprivation judicial review in child custody cases." *Campbell v. Burt*, 141 F.3d 927, 929 (9th Cir. 1998); *see Dulaney v. Grimm*, No. CV-13-036-JLQ, 2013 WL 3897770, at *8 (E.D. Wash. July 29, 2013) ("When the state removes a child from his parent, due process guarantees a prompt and fair post-deprivation judicial review."). "However, when the child is 'placed in the care of a consenting legal custodian, the parent from whom physical custody over the child is removed has no clearly established constitutional right to a state initiated hearing.'" *Pickett v. Boise Police Dep't*, No. 1:20-CV-00379-DCN, 2020 WL 5995484, at *6 (D. Idaho Oct. 7, 2020) (quoting *Shiraki v. Cannella*, 83 F. App'x 896, 897 (9th Cir. 2003)); *see Caldwell v. LeFaver*, 928 F.2d 331, 334 (9th Cir. 1991) (finding the right to a post-deprivation hearing when the state removes a child from a parent's custody is not clearly established when the child is "not placed with a person who lacked legal custody rights.").

24
25
26
27
28

Plaintiff received a post-deprivation hearing after his right to associate with his son was altered. Mother's initial order of protection was granted on August 15, 2016. (Doc. 119-1 at 3.) Eight days later, a family court held a combined hearing on the Order of Protection and a Temporary Custody Order. (Doc. 119 at 3.) Plaintiff presented evidence at the hearing and was represented by counsel. (Doc. 119 at 3); (Doc. 119-1 at 3–4). The court suspended Plaintiff's parenting time and ordered that AMD should remain with

Mother. *Id.* Plaintiff thus received an adequate post-derivation hearing. In fact, because AMD was placed with Mother, even a post-deprivation hearing was not constitutionally required. *See, e.g.*, *Sams v. Cty. of Riverside*, No. EDCV171848SVWSS, 2019 WL 3069180, at \*16–17 (C.D. Cal. June 14, 2019), *report and recommendation adopted*, No. EDCV171848SVWSS, 2019 WL 3067590 (C.D. Cal. July 10, 2019).

Plaintiff's reliance on Arizona statutes and regulations governing Defendants' conduct does not prove otherwise. As discussed above, these statutes do not establish he was constitutionally entitled to process. State law can create a right that the Due Process Clause will protect only if the state law contains "(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *James*, 606 F.3d at 656 (quoting *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)). "In order to contain the requisite substantive predicates, the state law at issue must provide more than merely procedure; it must protect some substantive end." *Bonin*, 59 F.3d at 842 (noting that the state statute created a procedural right designed to protect substantive rights to the effective assistance of counsel and to a reliable verdict) (internal quotations omitted).

Thus, provisions which dictate the form of an investigation, rather than its outcome, cannot create constitutional interests. *See James*, 606 F.3d at 656 (notice requirements); *Kleinman v. Soc. Servs. Agency - Alameda Cty.*, No. 16-CV-06961-JSC, 2020 WL 1031900, at \*3–4 (N.D. Cal. Mar. 3, 2020) (requirement that social service employees give preferential consideration to relatives of a removed child for relocation). "Thus, when a state establishes procedures to protect a liberty interest that arises from the Constitution itself—like a parent's liberty interest here—the state does not thereby create a new constitutional right to those procedures themselves, and non-compliance with those procedures does not necessarily violate the Due Process Clause." *See James*, 606 F.3d at 657; *Fox v. Cty. of Tulare*, No. 1:11-CV-O520 AWI SMS, 2014 WL 3687735, at \*11 (E.D. Cal. July 24, 2014) (finding that "failure of Defendants to adequately carry out state-mandated investigation, evaluation or assessment, or to have inaccurately represented such

1    evaluations or assessments in hearings before a family law judge" could not be a procedural

2    due process violation "because no new constitutional due process right is created when a

3    state enacts a law designed to protect an existing constitutional right.")

4        Each of the statutes and regulations Plaintiff cites creates procedural standards for

5    child safety workers during their investigations; none mandate an outcome which could

6    render the rule a constitutional interest.[2] Plaintiff thus received constitutionally sufficient

7    process.

8            **c. Statute of Limitations**

9        "[C]laims brought under § 1983 borrow the forum state's statute of limitations for

10   personal injury claims." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,

11   509 F.3d 1020, 1026 (9th Cir. 2007). In Arizona, that period is two years. *Madden-Tyler v.*

12   *Maricopa Cty.*, 189 Ariz. 462, 466, 943 P.2d 822, 826 (Ct. App. 1997). "Generally, the

13   statute of limitations begins to run when a potential plaintiff knows or has reason to know

14   of the asserted injury." *Action Apartment Ass'n, Inc.*, 509 F.3d at 1026–27.

15       Plaintiff alleges that he did not have reason to know that his rights were violated

16   until he made a records request seeking information about the status of his case. (Doc. 112

17   at 11–12.) The record reflects that the file was released on September 17, 2016. (Doc 112-

18   6 at 2.) Plaintiff filed a complaint on August 28, 2018. (Doc. 1-1 at 6.) He therefore brought

19   suit prior to the expiration of the statutory period.

20

21   [2] *See* Ariz. Rev. Stat. Ann. § 8-803(B) (requiring that a child safety worker inform the
     person about whom a report is made about their right to respond. Written or verbal

22   responses must be recorded and considered as part of the investigation); Ariz. Rev. Stat.
     Ann. § 8-807 (specifying that the subject of an investigation shall have access to DCS

23   information concerning themselves and that the Department should take precautions to

24   keep information confidential); Ariz. Rev. Stat. Ann. § 8-811(B) (requiring that the
     department provide notice within 14 days after the completion of an investigation); Ariz.

25   Rev. Stat. Ann. § 8-456(C)(1) (requiring a prompt and thorough investigation considering
     information that would tend to support or refute allegations against a custodian); A.A.C.

26   R21-4-104(A) (requiring coordination with law enforcement); A.A.C. R21-4-106

27   (requiring that an investigation be closed if the investigation determines the child is not in
     need of child safety services); A.A.C. R21-1-502 (requiring that an alleged perpetrator

28   receive an initial notification letter).

1

**CONCLUSION**

As explained above, qualified immunity bars Plaintiff's damages claims. His procedural due process claim also fails, but his claim for injunctive relief for substantive due process violations remains.

**IT IS THEREFORE ORDERED** that Plaintiffs' Partial Motion for Summary Judgment (Doc. 90) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Cross Motion for Summary Judgment (Doc. 97) is **GRANTED IN PART** as follows:

1.  Plaintiff's claims for damages are dismissed.

2.  Plaintiff's procedural due process claim is dismissed.

3.  Plaintiff's claim for injunctive relief for substantive due process violations remains.

Dated this 25th day of November, 2020.

*G. Murray Snow*

G. Murray Snow
Chief United States District Judge